**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:20-CV-00376-CHL**

**MICHAEL WAYNE HANCOCK,**                                                                **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,[1]**                                          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Michael Wayne Hancock ("Hancock"). Hancock seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Hancock and the Commissioner each filed a Fact and Law Summary. (DNs 18, 24.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 25.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the herein identified defects in the original proceedings.

**I.      BACKGROUND**

On or about February 8, 2017, Hancock filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on October 23, 2016. (R. at 15, 60, 73, 86, 100, 205-16.) On November 15, 2018, Administrative Law Judge

---

[1] As Kilolo Kijakazi is now the Acting Commissioner of Social Security in place of Andrew Saul, she is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Court will direct the Clerk to change the case caption to reflect the substitution.

("ALJ") William C. Zuber ("the ALJ") conducted a hearing on Hancock's application. (*Id.* at 34-59.) In a decision dated April 3, 2019, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 12-33.) In doing so, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022. (*Id.* at 18.)

2. The claimant has not engaged in substantial gainful activity since October 23, 2016, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: cerebral infarction (stroke) due to cerebral artery occlusion, coronary artery disease, hypertension, lumbar spine degenerative disc disease, chronic obstructive pulmonary disease, and Dupuytren's contractures. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling. The claimant is limited to occasionally reaching overhead bilaterally and to frequently fingering with both hands. He is limited to occasional exposure to extremes of temperature, vibration, dust, fumes, gases, and odors. The claimant should have no exposure to hazards, including unprotected heights and dangerous moving machinery. He is limited to sitting for 30 minutes at a time and to standing and/or walking 30 minutes at a time. (*Id.*)

6. The claimant is unable to perform any past relevant work. (*Id.* at 26.)

7. The claimant was born on March 17, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (*Id.*)

8. The claimant has at least a high school education and is able to communicate in English. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

> finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.* at 27.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 23, 2016, through the date of this decision. (*Id.*)

Hancock subsequently requested an appeal to the Appeals Council, which denied his request for review on March 27, 2020. (*Id.* at 1-6, 202-04, 307.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R.§ 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Hancock is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Hancock timely filed this action on May 27, 2020. (DN 1.).

## II.  DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 404-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2020).

### A.  Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

    **B.**    **Five-Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2020). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2020).

    (4)    Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

    (5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

    **C.**    **Hancock's Contentions**

Hancock challenges the ALJ's Finding Nos. 5, 10, and 11. (DN 18, at PageID # 797-98.) First, he claims the ALJ did not properly develop the record because he did not obtain updated medical opinions and erroneously based his physical RFC determination on an outdated consultative examiner's opinion and his own lay opinion. (DN 18-1, at PageID # 810-12.) Second, Hancock asserts that the ALJ's reliance on his own lay interpretation of medical records indicating periods of improvement rendered the RFC and the subjective complaint analysis unsupported by substantial evidence. (*Id.* at 812-13.) This Court will consider these arguments below.

Hancock asks this Court to reverse the ALJ's RFC determination because it was based on an incomplete record. Hancock claims the record was incomplete because the ALJ gave substantial weight to the June 29, 2017, opinion of the state medical consultant, P. Saranga, M.D. ("Dr. Saranga"), which was outdated. (*Id.* at 810; R. at 25.) Dr. Saranga's opinion was issued

5

before Hancock underwent three cardiac catheterizations and two cardiac stent placements. (DN 18-1, at PageID # 810; R. at 21-23, 25, 93-97, 500-513, 669-75, 700-05.) Therefore, Hancock argues that the ALJ should have requested a treating source opinion or ordered a consultative examination to guide his analysis given the "significant events following the last professional functional opinion." (DN 18-1, at PageID # 811.) He further argues that lacking a medical opinion interpreting the new medical evidence, the ALJ improperly substituted his own lay interpretation of raw medical data in place of medical opinion. (*Id.* at 810-12.)

The Commissioner responds that the claimant "has the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding his impairments." (DN 24 at PageID # 830 (citing 42 U.S.C. § 423(d)(5)(A).) The Commissioner argues the ALJ's decision to gather additional evidence is discretionary, and in this case the ALJ "reasonably reviewed the evidence and medical opinions in the record and determined that the evidence was sufficient to determine an RFC." (*Id.* at 832.) The Commissioner emphasizes that Hancock did not sufficiently demonstrate how the catheterizations and stent placements on which he relies resulted in functional limitations greater than those found in the ALJ's RFC determination. (*Id.* at 833.)

The Commissioner is correct that the claimant bears the burden of proving "the existence and severity of limitations caused by" his physical and mental impairments. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, both the regulations and case law recognize the ALJ has a duty to develop the record. 20 C.F.R. §§ 404.1512(b), 416.912(b) (2016); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2020); *see also Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). If after reviewing the evidence on the record, the ALJ finds it to be insufficient or inconsistent, the ALJ may "determine the best way to resolve the

inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(b)(2), 416.920b(b)(2) (2020).  An ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner, but he may take additional steps to do so, including ordering a consultative examination.  20 C.F.R. §§ 404.1520b(b)(2)(iii), 416.920b(b)(2)(iii); *see Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).  While the ALJ has discretion in resolving discrepancies, substantial evidence in the record must support the residual functional capacity finding.  *See, e.g.*, *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).

In *Deskin v. Comm'r of Soc. Sec.*, the Northern District of Ohio held that an ALJ may make a "commonsense judgment about functional capacity even without a physician's assessment," but only when "the medical evidence shows relatively little physical impairment." *Id.* at 912 (quoting *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)).  However, when "making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Id.*; *see also Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013, at *11-12 (E.D. Ky. Feb. 6, 2019) (citing *McGranahan v. Colvin*, No. 0:14-CV-83-JMH, 2015 WL 5828098, at *3 (E.D. Ky. Oct. 1, 2015)).  The *Deskin* court articulated the rule as follows:

> [W]here the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing.

*Deskin*, 605 F. Supp. 2d at 912.  While the Sixth Circuit has not commented on *Deskin,* significant case law in this circuit supports the principle that when the evidence of physical impairment is more than minimal, an independent determination of functional limitations by the ALJ is not supported by substantial evidence and a medical opinion is required.  *See Gross v. Comm'r of Soc.*

*Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017) (collecting cases). However, the "*Deskin* rule" narrowly applies in only two situations: "(1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Branscum*, 2019 WL 475013, at *11 (quoting *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013)); *see also Kizys v. Comm'r of Soc. Sec.*, No. 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011). The *Deskin* rule applies here because the ALJ "made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Branscum*, 2019 WL 475013, at *11 (quoting *Raber*, 2013 WL 1284312, at *15).

The record in this case did not contain an updated opinion from a medical professional regarding Hancock's functional capacity that post-dated his significant cardiac procedures and care. The ALJ gave substantial weight to Dr. Saranga's June 29, 2017, opinion. (R. at 25-26, 93-97.) Based on the medical evidence available at the time, Dr. Saranga found Hancock capable of light work with limitations of occasionally lifting or carrying twenty pounds; frequently lifting or carrying ten pounds; standing/walking six out of eight hours in a day; occasionally climbing ramps, kneeling, stooping, crouching, and crawling; never climbing stairs; and limited reaching with the left hand overhead. (*Id.* at 93-97.) The ALJ found Dr. Saranga's opinion consistent with the longitudinal record. (*Id.* at 25.) The ALJ also added the limitations of sitting for thirty minutes at a time and standing and/or walking thirty minutes at a time based on Hancock's complaints and additional objective evidence of worsening degenerative disc disease submitted to the record after Dr. Saranga's opinion. (*Id.* at 25-26.) The ALJ discussed the May 3, 2017, opinion of Hancock's

8

primary care physician Dr. Faiz Uddin ("Dr. Uddin") but gave it little weight due to inconsistency with the record and its reliance on conclusory statements and subjective complaints. (*Id.* at 26.)

As indicated in the adjustment the ALJ made to Dr. Saranga's RFC, additional medical evidence was submitted during the sixteen-month period between Dr. Saranga's opinion and the administrative hearing. Medical exhibits were entered regarding Hancock's myocardial infarction and treatment for coronary artery disease. *(Id.* at 500-13, 669-75, 700-05.) The ALJ discussed Hancock's coronary artery disease in his opinion. He recognized that Hancock testified to having chest pain and needing to rest for ten to fifteen minutes when he takes some of his cardiac medications. (*Id.* at 20.) Additionally, the ALJ discussed at length the findings of Hancock's cardiac stress testing, cardiac catheterizations, and coronary artery stenting procedures in July and November of 2017 and September 2018. (*Id.* at 21, 22.) The ALJ's discussion demonstrates that the evidence related to Hancock's cardiac impairments does not show "relatively little physical impairment." *Deskin*, 605 F. Supp. 2d at 912 (quoting *Manso-Pizarro,* 76 F.3d at 17). In fact, Hancock had a positive stress nuclear scan manifested by ischemia of the inferior wall on September 18, 2018. (R. at 709-10.) This was followed-up with a left heart catheterization and stent implantation in the right coronary artery on September 26, 2018, less than two months before the administrative hearing. (*Id.* at 704-05.) Hancock complained of ongoing chest pain at the hearing. (*Id.* at 43.) Additionally, he related that there are times he needs to lie down and rest after taking medication for his "heart problems" due to chest pain. (*Id.* at 50.) The ALJ even included this testimony in his opinion. (*Id.* at 20 ("The claimant testified that he takes nitroglycerin a couple of times a week for chest pain and then lies down for 10-15 minutes each time.").) The ALJ's opinion did not discuss any reasons to discount Hancock's testimony about the side effects of his cardiac medications. At the hearing, the vocational expert Dr. Barnes acknowledged that if

9

Hancock required two or three extra breaks two to three days a week this would not allow for competitive work. (*Id.* at 57.)

In sum, over the course of a 15-month period post-dating the last opinion evidence of record, Hancock had a myocardial infarction, three cardiac catheterizations, and two stent placements and continued to suffer from intermittent chest pain up to the date of the administrative hearing requiring medication with significant side effects. Despite these serious and ongoing cardiac impairments, there is no medical opinion on the record addressing the functional implications of Hancock's cardiac conditions and medical treatment. While the ALJ's discussion of the evidence relating to Hancock's cardiac testing and procedures was thorough, he is not qualified to opine on functional limitations based solely on his own review of the medical evidence. The ALJ instead relied on an outdated consultative opinion and formed his RFC determination based on bare medical findings.

For these reasons, the ALJ's RFC determination is not supported by substantial evidence in the record. This Court will reverse and remand this case to the Commissioner under sentence four of 42 U.S.C. § 405(g) to assess Hancock's RFC in relation to his cardiac impairments with the assistance of a medical opinion. In light of the remand and reason for the same, the Court does not reach Hancock's argument that the ALJ's subjective complaint analysis was not supported by substantial evidence.

### III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **REVERSED** and that this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the above-identified defects in the original proceedings.

IT IS FURTHER ORDERED that pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the Defendant in place of Andrew Saul, and the Clerk is directed to change the case caption to reflect the substitution.

*Colin H Lindsay, Magistrate Judge*
*United States District Court*

cc:  Counsel of Record

March 14, 2022